

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-62,099-05

### EX PARTE ROBERT LYNN PRUETT, Applicant

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS AND MOTION TO STAY THE EXECUTION IN CAUSE NO. B-D1-MO15-PR-B IN THE 156TH JUDICIAL DISTRICT COURT BEE COUNTY

**ALCALA, J., filed a dissenting statement.**

## DISSENTING STATEMENT

The Legislature recently enacted three statutes addressing the inherently questionable nature of inmate testimony, the prejudicial impact of junk science, and the problems that occur when the State does not fully participate in discovery with the defense, and this snakebit case is riddled with each of those problems. I would grant the motion to stay this impending execution for a capital-murder conviction against Robert Lynn Pruett, applicant,

on the basis that this Court should fully consider the merits of his complaint that junk science played a primary role in his conviction, but in discussing the gravity of the situation, I also note that this case is riddled with problems that the Legislature has attempted to now fix: junk science, inmate testimony, and lack of discovery. This application for a post-conviction writ of habeas corpus filed by applicant challenges his conviction for the 1999 capital murder of Daniel Nagle, a correctional officer at the McConnell Unit. *See Pruett v. State*, No. 74,370 (Tex. Crim. App. Sept. 22, 2004) (not designated for publication); *Ex parte Pruett*, 207 S.W.3d 767, 767 (Tex. Crim. App. 2005) (denying initial application). I respectfully dissent from the Court's dismissal of this post-conviction writ application on procedural grounds and its denial of the motion to stay the execution filed by applicant. *See* TEX. CODE CRIM. PROC. art. 11.071, § 5. Instead, I would file and set the present application for this Court to interpret the meaning of Article 11.073, and, if appropriate, remand this claim to the habeas court for an evidentiary hearing. *See id*. art. 11.073. I would further sua sponte reopen applicant's previous application for a writ of habeas corpus in which he asserted complaints premised on the ineffectiveness of trial counsel and a due-process violation challenging the use of false evidence at his trial. Rather than permit an execution to take place under circumstances in which the primary evidence underlying the conviction—inmate testimony and likely junk science testimony based on the purported matching of strips of masking tape—has been deemed inherently questionable and unreliable by the Legislature, I would instead ensure that the integrity of this conviction is beyond reproach by staying the

execution and examining the evidence more closely.

## I. Background

The record suggests that applicant was convicted primarily on the testimony of inmate-witnesses and junk science. The evidence adduced at applicant's 2002 capital-murder trial indicated that the shank used to stab Nagle had masking tape wrapped around the handle. Applicant's fingerprints were not found on the weapon. To connect applicant to the murder weapon, the State presented testimony from inmate witnesses, one of whom testified that he gave applicant the masking tape that was then used to make the murder weapon. Specifically, this inmate-witness stated that applicant's cell mate, Phillips, gave masking tape to him and asked him to pass it along to applicant. To corroborate the inmate-witness's story, the State presented the expert testimony of Lisa Harmon Baylor, who testified that, through the "science" of physical match comparison, she was able to identify the tape wrapped around the handle of the weapon as having been torn off of one of the rolls at Phillips's workstation in the prison craft shop.

As to motive, the State's theory was that applicant was upset because Officer Nagle had written a disciplinary charge against applicant for having food in an area of the prison where food was not permitted. *See In re Pruett*, Nos. 15-20222, 15-70011, 2015 WL 1840601, at *1 (5th Cir. April 23, 2015). Torn pieces of the disciplinary report were found near Officer Nagle's body after the murder. *Id*. At trial, applicant testified that Officer Nagle tore up the report in applicant's presence and that applicant then walked away, leaving

Officer Nagle alive and well. *Id.* "[T]here was no physical evidence connecting [applicant] to the murder." *Id.* DNA testing revealed that only Officer Nagle's blood was found on the disciplinary report. *Id.*[1]

## II. This Court Should Stay the Execution and Remand the Current Application

In his current application, applicant asserts that he is entitled to receive a new trial because it is likely that jurors would not have convicted him had they been informed that the "science" relied upon by the State's expert has now been discredited. *See* TEX. CODE CRIM. PROC. art. 11.073(b)(2). Applicant now contends that, according to a 2009 Forensic Report issued by the National Academy of Sciences, the "science" of physical match comparison, which was the basis for the State's expert's testimony regarding the matching of the masking tape, has now been discredited. Applicant asserts, therefore, that had the jurors at his trial known that the science relied upon by the State has now been discredited, it is more likely than not that they would not have convicted him of capital murder.

Applicant's complaint that junk science was used to convict him is precisely what the Legislature had in mind when it enacted Article 11.073 to permit post-conviction challenges premised on relevant scientific evidence that was not available to be offered by a convicted

---

[1]Although applicant has previously asserted that his lack of DNA on the report suggests that he did not commit this offense, I conclude that the lack of DNA is not evidence of his innocence when only the victim's DNA was found on the report. *See Pruett v. State*, No. AP-77,037, 2014 WL 5422573 (Tex. Crim. App. Oct. 22, 2014) (upholding trial court's determination that it was not reasonably probable that applicant would have been acquitted at his trial on the basis of "inconclusive" results of DNA and palm-print testing). I am also unpersuaded that applicant is entitled to relief from his conviction because the State did not take better care in preserving the physical evidence against him.

person at the convicted person's trial or that contradicts scientific evidence relied on by the State at trial. *See* TEX. CODE CRIM. PROC. art. 11.073(a). Article 11.073 states, "A court may grant a convicted person relief on an application for a writ of habeas corpus if: (1) the convicted person filed an application, in the manner provided by Article 11.07, 11.071, or 11.072, containing specific facts indicating that (A) relevant scientific evidence is currently available and was not available at the time of the convicted person's trial because the evidence was not ascertainable through the exercise of reasonable diligence by the convicted person before the date of or during the convicted person's trial; and (B) the scientific evidence would be admissible under the Texas Rules of Evidence at a trial held on the date of the application; and (2) the court makes the findings described by Subdivisions (1)(A) and (B) and also finds that, had the scientific evidence been presented at trial, on the preponderance of the evidence the person would not have been convicted." *See id.* art. 11.073(b).

Although applicant plainly appears to have made a prima facie case that junk science was used to convict him, there is a question as to whether he has timely asserted his claim. The factual basis underlying applicant's claim is the 2009 Forensic Report, but he did not present his claim in his earlier post-conviction writ applications that were filed after 2009. With respect to the applicable timing requirements, Article 11.073 states, "For purposes of . . . Section 5(a)(1), Article 11.071 [the statutory bar on subsequent writs] . . . a claim or issue could not have been presented previously in an original application or in a previously

considered application if the claim or issue is based on *relevant scientific evidence that was not ascertainable* through the exercise of *reasonable diligence* by the convicted person on or before the date on which the original application or a previously considered application, as applicable, was filed." *See id.* art. 11.073(c) (emphasis added). "In making a *finding* as to whether *relevant scientific evidence was not ascertainable* through the exercise of reasonable diligence on or before a specific date, *the court shall consider* whether the scientific knowledge or method on which the relevant scientific evidence is based has changed since the applicable trial date or dates, for a determination made with respect to an original application[,] or the date on which the original application or a previously considered application, as applicable, was filed, for a determination made with respect to a subsequent application." *See id.* art. 11.073(d) (emphasis added).

Today, this Court declines to consider the merits of applicant's claim and instead dismisses this application as an abuse of the writ on the basis that the pleadings fail to satisfy the requirements of Article 11.071, § 5(a) and Article 11.073(c). *See id.* art. 11.071, § 5(a), 11.073(c). The theory supporting dismissal is that applicant's current habeas counsel could have, but did not, raise this new-scientific-evidence claim in his 2014 writ application because, at that time, he should have had access to the 2009 National Academy of Sciences Report that he uses as his evidentiary support for his current claim. The Court thus concludes that consideration of applicant's claim is procedurally barred.

By focusing solely on the statutory language in Subsection (c), this Court has failed

to consider the meaning of that language when viewed in the broader context of the entire statutory scheme, and it has read terms into the statute that are not in its plain language. The statute requires either this Court or the habeas court to make "a *finding* as to whether *relevant scientific evidence was not ascertainable* through the exercise of reasonable diligence on or before a specific date." *See id.* art. 11.073(d). Typically, findings are made by a habeas court after a full consideration of the evidence in the record, which would suggest that the case should be remanded to the habeas court for that to occur. Alternatively, if this Court is to make that finding, which would be contrary to our ordinary approach to applications for writs of habeas corpus, this Court only has pleadings before it, and we have not yet filed and set this case to decide it on the merits, so a finding at this stage based on mere pleadings would be inappropriate. Furthermore, although it is true that applicant relies on a 2009 report that predated his earlier applications, I cannot conclude that the date on which a report was issued is alone enough to show that this relevant scientific evidence was, as a matter of law, "ascertainable" through the exercise of "reasonable diligence" when applicant filed his earlier applications for post-conviction writs. *See id.* In any event, the statute is unclear as to whether it requires a "finding" from the habeas court or from this Court with respect to the timeliness of the Article 11.073 claim, and this Court should grant a stay to examine the meaning of the statute through a written opinion.

I also note that, by dismissing applicant's new-scientific-evidence claim based on his pleadings alone, this Court reads a term into this new-science law that does not appear in the

statutory language. This Court effectively holds today, for the first time since the statute's effective date of September 1, 2013, that a case will be dismissed if an applicant fails to provide evidence making a prima facie case that relevant scientific evidence was not ascertainable through the exercise of reasonable diligence on or before a specific date. *See id*. Although typically this Court has required that type of pleading to overcome the procedural bar on subsequent writs, that type of pleading requirement, applied in the present context, appears to run contrary to the legislative intent to liberally permit post-conviction challenges to convictions based on junk science. As of now, this Court has issued only one opinion addressing Article 11.073, *Ex parte Robbins*, and a motion for rehearing is pending in that case. *See Ex parte Robbins*, No. WR-73,484-02 (Tex. Crim. App. Nov. 26, 2014). Because the meaning of the temporal requirements of this statute are a matter of first impression before us, this Court should grant applicant's motion to stay the execution to fully consider whether it is this Court or the habeas court that should determine whether an applicant has pleaded facts to make a prima facie showing of "reasonable diligence" to secure the new-science evidence, whether such a pleading requirement exists at all in this context, and whether a habeas court rather than this Court must make a finding on the question of reasonable diligence as part of the trial court's findings and conclusions as to the merits of a complaint. There are far too many unanswered questions with respect to the meaning and application of Article 11.073 at this juncture to permit a person to be executed for capital murder in a case in which it appears that junk science was used to corroborate the

inherently questionable inmate testimony.

To further explain why this Court should step back and permit applicant to further develop his arguments, it should be noted that even as early as 2004, the trial court that heard applicant's initial application for a writ of habeas corpus made findings of fact that "fundamental and material violations of the Constitution, the Rules of Evidence, and the trial court's pretrial discovery" occurred in this case, and it recommended "that the applicant's conviction be set aside." *See Ex parte Pruett*, 207 S.W.3d 767 (Tex. Crim. App. 2005) (per curiam). During the last legislative term, again concerned that trials like those that occurred here should not be happening in Texas, the Legislature passed the Michael Morton Act to ensure that defendants would receive discovery of the evidence the State had in its possession so that they could prepare a defense against it. *See* TEX. CODE CRIM. PROC. art. 39.14. In rejecting the trial court's recommendation that applicant be granted a new trial based on discovery violations that occurred even before the passage of the Michael Morton Act, this Court held that, because the Due Process Clause confers upon defendants a right to be informed about the existence of exculpatory evidence, it does not require the prosecution "to 'reveal before trial the names of all witnesses who will testify unfavorably.'" *See Pruett*, 207 S.W.3d at 767. This Court further determined that, as "for the trial court's conclusion that the failure to reveal the inculpatory statements also violated the rules of evidence and the trial court's discovery order, such violations, even if they occurred, would not be grounds for relief on habeas corpus." *Id*. Although this Court accurately decided the case under then

existing law, the Legislature's continued interest in addressing the particular problem that the trial court here found so compelling that it recommended a new trial in 2004 should give us pause before summarily rejecting applicant's present complaint.

**III. Applicant's Second Application Should be Reopened by this Court Sua Sponte to Address His Allegations of a Due Process Violation by the Use of False Evidence**

I would grant applicant's motion to stay his execution and sua sponte reopen the second application for a writ of habeas corpus filed in 2014 by applicant, in which he alleged a due process violation by the use of false evidence. *Ex parte Pruett*, No. WR-62,099-02 (Tex. Crim. App. Dec. 10, 2014) (not designated for publication). This Court determined that the subsequent application failed to satisfy the requirements of Article 11.071, § 5(a), and the Court dismissed it. *See id.*; TEX. CODE CRIM. PROC. art. 11.071, § 5(a). I dissented to that dismissal on the basis that applicant had made a prima facie showing that his claims should have been remanded to the trial court for consideration. *Ex parte Pruett*, No. WR-62,099-02 (Alcala, J., dissenting). Applicant complained that "due process was violated when the State failed to disclose deals that had been made with the inmate witnesses that testified during guilt/innocence and failed to correct false testimony." Applicant explained that his due-process rights were violated by the State's failure to disclose that a deal had been made with Harold Mitchell and also by the State's failure to correct Mitchell's false testimony. Furthermore, applicant contended that his "right to due process was violated by the State's failing to disclose that inmates who desired to testify on Pruett's behalf were threatened and physically assaulted." Applicant argued that the factual basis of this claim

was unavailable on the date that he filed his initial application. I concluded that applicant had pleaded a prima facie case that his due-process rights were violated and voted to remand that complaint for consideration on whether there was a factual basis showing that this claim was unavailable during his initial application, and, if so, addressing the merits of this complaint.

Applicant's assertions that the State used the false testimony of inmate-witnesses is precisely what the Legislature was concerned about when it passed statutes to regulate this type of evidence after applicant's trial took place. In 2009, the Legislature enacted Article 38.075, which states, "A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed." *See* TEX. CODE CRIM. PROC. art. 38.075(a). Because this enactment reflects a legislative determination that testimony by one inmate against another is inherently unreliable, this Court should also recognize that reality and remand this case to the habeas court for consideration of applicant's claims that the inmates gave false testimony against him.

### IV. Applicant's Second Application Should be Reopened by this Court Sua Sponte to Address His Claim of Ineffective Assistance of Habeas Counsel

I would grant applicant's motion to stay his execution and sua sponte reopen the second application for a writ of habeas corpus filed in 2014 by applicant, in which he alleged

that his original habeas counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel. *See Ex parte Pruett*, No. WR-62,099-02. This Court determined that the ineffective-assistance-of-trial-counsel claim failed to satisfy the requirements of Article 11.071, § 5(a), and the Court dismissed it. *See id.*; TEX. CODE CRIM. PROC. art. 11.071, § 5(a). I dissented to that dismissal on the basis that applicant had made a prima facie showing that his claims should have been remanded to the trial court for consideration, relying on the reasoning in my dissent in *Ex parte Buck* and suggesting that inadequate representation by habeas counsel in failing to raise a potentially meritorious claim should serve as a basis to overcome the bar on subsequent writs. 418 S.W.3d 98, 109 (Tex. Crim. App. 2013) (Alcala, J., dissenting); *Ex parte Pruett*, No. WR-62,099-02 (Alcala, J., dissenting).

In my dissenting statement on applicant's second application for a writ of habeas corpus, I noted that applicant had presented new, prima facie evidence of a change in his sentencing profile, such as that he was the victim of sexual abuse as a child by his mother for an extended period of time, that his mother prostituted him to men, and that his extreme poverty required him and his mother to dig through dumpsters to look for food and to sleep in parks due to homelessness. Given the substantial volume of mitigating evidence that had emerged since the time of applicant's trial, I concluded that applicant had presented a prima facie case of ineffective assistance of trial counsel, worthy of remanding to the habeas court for consideration of that claim on the merits.

## V. Conclusion

I do not reach the ultimate merits as to whether applicant has presented grounds on which habeas relief should be granted.   Rather, I decide only that applicant has presented, both in the earlier application and in the current application, an adequate basis upon which to make a prima facie case that should be remanded to the habeas court for full consideration of the merits.  Given the multitude of the allegations of constitutional violations in this case, I respectfully dissent from the Court's dismissal of the application and to this Court's denial of the motion to stay applicant's execution.

Filed: April 24, 2015

Publish