Opinion by Justice Moseley *102 In Hunt County, Texas, George Briscoe was charged with (1) theft of property worth more than $1,500, but less than $20,000, (2) giving a false statement to obtain credit of more than $1,500, but less than $20,000, and (3) theft of property worth more than $20,000, but less than $100,000. After a jury trial, Briscoe was found guilty of all three charges. On the charge of theft, he was sentenced to 180 days in state jail. As to the second charge (giving a false statement to obtain property or credit), he was sentenced to two years in state jail, probated for five years, assessed a $10,000 fine, and ordered to pay $13,000 in restitution. On the final charge of theft, he was sentenced to ten years in prison, probated for ten years, assessed a $10,000 fine, and ordered to pay $28,862 in restitution. The incarceration time of the three sentences was to run concurrently.
Here, Briscoe appeals from his conviction of theft of property in an amount greater than $1,500, but less than $20,000.[1] He contends that: (1) the trial court erred in admitting photographs of two checks; (2) the evidence supporting the verdict was legally insufficient;[2] and (3) the trial court erred in admitting exhibits and testimony regarding exhibits which the State failed to provide in discovery.
We affirm the trial court's judgment because: (1) the trial court acted within its discretion to admit the checks; (2) there was legally sufficient evidence that the funds were obtained without consent; and (3) Briscoe was not entitled to the discovery giving rise to his complaint.
I. Factual Background
In Hunt County, Texas, Chigger Ridge Ranch, L.P., (Chigger Ridge) operated a 700-acre, commercial hunting area called Coyote Crossing Ranch and its personalty (CCR). Chigger Ridge was owned by Clete Aycox and Len Rao in equal shares with Aycox making its business decisions. On March 24, 2010, Chigger Ridge leased its assets for twelve months to Briscoe's company, VPW Management, LLC (VPW). The lease identified all real property, vehicles, and equipment that belonged to Chigger Ridge and allowed VPW to use it in the normal course of operating the business conducted thereon, but did not convey any ownership interest. Under the terms of the lease, VPW was to pay $13,000 per month in rent. The lease agreement also granted VPW a limited-time option during the term of the lease to purchase the assets of Chigger Ridge, including the real property, structures, vehicles, and equipment, for $3,400,000.
In April 2010, VPW began operating the CCR commercial hunting business, with Briscoe as "the ultimate person in charge of what went on at the ranch." Briscoe envisioned purchasing CCR and then selling it to Hope 4 Tomorrow, a non-profit foundation run by his mother. Emails between Briscoe and Aycox show that VPW
*103 was frequently tardy in its rent payments; despite the repeated delinquencies in the lease installments, Briscoe continued to assure Aycox that his intention was to purchase CCR. To that end, in June 2011, Aycox extended VPW's purchase option period by ninety days, backdated to the original lease expiration date of March 24, 2011.
Ray April, one of VPW's full-time employees working at CCR, testified that in addition to his maintenance and game-related job duties, Briscoe had him sell some of the "extra equipment" from CCR. April did not question the sales because Briscoe told him that he (Briscoe) owned CCR. April remembered selling various equipment "during the ... summer and fall of 2010 ... [and] pretty much the whole time [they] were there." Following Briscoe's instructions, April remembered selling a quick-feed bulk buggy, a tandem-axle trailer, a bulldozer, dog boxes, and, possibly, a second trailer, as well as removing the engine from an older Ford truck to sell for parts, and then selling the rest of the truck for scrap. He testified that Briscoe would give him a bill of sale to sign and complete each transaction.
Through a written and signed bill of sale, Briscoe sold a one-half interest in a Bobcat tractor[3] to Jayson Campbell for $10,000. Campbell's $10,000 check had "Bobcat" in the memo line. The bill of sale was dated June 24, 2011, was signed by Briscoe, and purported to sell a one-half interest in a Bobcat for $10,000. The bill of sale included a buy-back provision stating that the "[b]uyer and seller agree that the seller has the option to buyback [sic] the equipment within 90 days and [sic] a rate of 5% per month." Shortly after the transaction, Campbell drove to CCR, loaded the Bobcat onto a trailer, and left with it.
Aycox made several trips to CCR during the course of the lease to speak with Briscoe, inspect the property, and show the property to potential buyers. During one visit, Aycox noticed that some of the equipment usually on CCR grounds was missing, and Briscoe told him that the equipment was off-site being repaired. When Aycox came to visit the property in July 2011, he found the entrance gate chained and locked. He contacted Hunt County Constable Doc Pierce, who arrived at the gate, and after Aycox cut the chain, the two men entered the property. Aycox and Briscoe had a heated conversation, but Pierce had Aycox stand outside while Pierce and Briscoe spoke inside the lodge. Briscoe told Pierce that "some of the stuff might have been sold, but some of it was being repaired" in Oklahoma. Pierce saw a truck parked outside the lodge that was "loaded down with equipment ... clothing and stuff like that," and Briscoe left the property, telling Pierce that he was going back home to Oklahoma.
Aycox provided Pierce with an inventory and identifying information for the missing CCR vehicles and equipment, and Pierce began an investigation. The list of missing equipment included (but was not limited to) a Bobcat tractor, a 1986 Ford ¾-ton truck, a 1996 GMC 2500 truck, two Polaris Ranger 6x6 ATVs, a Northern Tractor, a Quick Feed Systems five-ton deer feed buggy, a dual-axle trailer, a sixteen-foot hunting trailer, and a Northern Tool backhoe attachment. Within a few months, Pierce found most of the property on Aycox's list and seized it from people who appeared to be innocent purchasers. The Bobcat tractor and its accessories were found in the possession of Campbell and Charles Powell in Commerce, Texas. One of the Polaris ATVs, the 1996 GMC truck, and the tractor were found at various businesses *104 in Paris, Texas, and were allegedly purchased from Briscoe or his agents. The other Polaris ATV was found at the home of Tom Skidmore in Ravenna, Texas.
Separate property hearings were held before Justice of the Peace Jennifer Reeves regarding the seized vehicles and equipment. After hearing testimony from the witnesses in attendance, Reeves awarded possession of the Bobcat, the two Polaris ATVs, the Northern tractor, and the 1996 GMC truck to Aycox.
For the funds he allegedly received from the sale of the ATVs, the truck, and the Northern tractor, Briscoe was charged with theft of between $20,000 and $100,000 from the buyers, Buddy Michael and/or Ronny Michael. Regarding the sale of the Bobcat, he was charged with giving a false or misleading written statement to Campbell to obtain property or credit in an amount more than $1,500, but less than $20,000. For allegedly acquiring or otherwise unlawfully appropriating eight items of Aycox's property, including vehicles, ATVs, and equipment, Briscoe was indicted for theft of property worth more than $20,000, but less than $100,000. All three cases were consolidated for trial. After a jury trial, Briscoe was found guilty of all three charges. On the first charge of theft, he was sentenced to 180 days in state jail. As to the second charge, giving a false statement to obtain property or credit, he was sentenced to two years in state jail, probated for five years, assessed a $10,000 fine, and ordered to pay $13,000 in restitution. On the final charge of theft, he was sentenced to ten years in prison, probated for ten years, assessed a $10,000 fine, and ordered to pay $28,862 in restitution. The three sentences were to run concurrently. Briscoe appealed from all three convictions and filed a consolidated brief.
II. Did the Trial Court Err in Admitting the Two Checks?
In his first point of error in this case, Briscoe contends that the trial court erred in admitting State's Exhibits 28 and 29, copies of two checks from J.E. "Buddy" Michael to CCR, because the State failed to establish a sufficient predicate.
We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Martinez v. State , 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." Taylor v. State , 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) ; Montgomery v. State , 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. Moses v. State , 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. De La Paz v. State , 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).
In late August 2011, the investigation led Pierce to Jemasco, a Lamar County business, where he found some of the missing property-a Polaris Ranger 6x6 ATV and a tractor-which the business was having repaired at a nearby hydraulic shop. Pierce discovered the missing 1996 GMC truck at a Paris Chevrolet dealership. He found the other missing Polaris Ranger 6x6 at the home of Skidmore. Skidmore testified that Jemasco's owner, Michael, brought it to him a few weeks earlier to see if he could get it running again.
Pierce testified that Michael had given him copies of two checks that Michael had made out to CCR.[4] The first check, number *105 1011, was for $3,500, dated May 24, 2011, and had "truck and 2 rangers" written in the memorandum line. The second check, number 1013, was for $3,300, dated May 27, 2011, and had "nortrac tractor" written in the memorandum line. Pierce testified that the checks were the last pieces of evidence he collected in his investigation of this case.
Pierce identified State's Exhibits 27 and 28 as the check copies he had received from Michael to which he had made reference earlier in his testimony. When the State offered the exhibits for admission into evidence, Briscoe objected, arguing that the proper predicate had not been established for their admission.[5] Without ruling on the objection, the court allowed the State to ask its predicate questions. The State handed Pierce a page from State's Exhibit 6, bank records from CCR, and Pierce identified deposits into CCR's account of $3,500 on May 24, 2011, and $3,300 on May 27, 2011. Pierce testified that the deposits and their amounts corresponded with the dates and amounts of the two checks, but he admitted that the bank records did not reference check numbers for those two deposits.
Again, the State offered Exhibits 27 and 28 into evidence, and Briscoe objected, arguing:
That's not sufficient predicate. I mean, there's nothing that establishes that any check given on a certain date is deposited on a certain date. There's nothing in the bank statement, State's Exhibit 6, that references any number. If you look at State's Exhibit 6, page 1 of 6, there's nothing that relates or correlates to any of this.
The trial court overruled Briscoe's objection finding that "[t]here [was] sufficient indicia of reliability, based on the combination of State's Exhibit[s] 6, 27, and 28, for the Court to admit those documents."
Here, Briscoe argues that the trial court erred in admitting the exhibits. In support of his argument, Briscoe cites Landers v. State , a check forgery case, where the court found a check inadmissible due to an inadequate predicate because
[t]he State offered no testimony or proof whatever as to where the check came from, in whose possession it had been, whether or not it had ever been passed or attempted to be passed by anyone, who had put the information on it, or whether it had ever been paid. It was simply admitted into evidence and exhibited to the jury without any explanation whatever as to its relevancy or as to any connection whatever with the appellant.
Landers v. State , 519 S.W.2d 115, 117 (Tex. Crim. App. 1974). However, the facts of this case are distinguishable from those of Landers because here the State laid a proper predicate for the exhibits' admission, as Pierce gave first-hand testimony that the exhibits were what the State claimed them to be. See TEX. R. EVID. 901(a), (b)(1). Pierce testified that he personally received the checks as evidence in his investigation of this case, and he identified Exhibits 27 and 28 as the copies of the checks he received from Michael, the owner of the business where some of the stolen equipment was found. The check dates and amounts correspond exactly with deposits made into CCR's bank account, and the checks' memo lines reference some of the missing vehicles and equipment. The fact that the bank deposits fail to show a *106 corresponding check number goes to the weight to be accorded to the evidence, rather than to its admissibility. See Gibson v. State , 952 S.W.2d 569, 572 (Tex. App.-Fort Worth 1997, pet. ref'd) (if adequate predicate for admission, strength or weakness of the predicate goes to weight of the evidence). Therefore, we overrule this point of error.
III. Is the Verdict Supported by Legally Sufficient Evidence?
In his next point of error, Briscoe contends that the evidence supporting the verdict is legally insufficient.[6]
In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks , 323 S.W.3d at 912 (citing Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ); Hartsfield v. State , 305 S.W.3d 859, 863 (Tex. App.-Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. Brooks , 323 S.W.3d at 917-18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson , 443 U.S. at 318-19, 99 S.Ct. 2781 ); Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State , 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id.
Here, the indictment alleged that Briscoe did "unlawfully appropriate property, to-wit: U.S. Currency and bank account funds, the aggregate value of which was $1500.00 or more but less than $20,000.00 without the effective consent of the owner, BUDDY MICHAEL and/or RONNY MICHAEL ... and with intent to deprive the said owner of the said property."[7] "When an indictment alleges theft in the most general of statutory terms, ... the hypothetically correct jury charge embraces any and every statutorily defined *107 alternative method of committing the offense that was fairly raised by the evidence." Taylor v. State , 450 S.W.3d 528, 535 (Tex. Crim. App. 2014). In a case of theft by deception, the evidence must show "that the defendant created or confirmed by words or conduct a false impression, or failed to correct a false impression, of law or fact that was likely to affect the property owner's judgment in the transaction." Roberts v. State , 319 S.W.3d 37, 49 (Tex. App.-San Antonio 2010, pet. ref'd).
Briscoe contends that "no evidence was presented from Buddy Michael, or anyone with personal knowledge, that the funds in this cause were obtained without consent."[8] "Consent is not effective if ... induced by deception." TEX. PENAL CODE ANN. § 31.01(3)(A) (West Supp. 2017). Deception is defined as:
(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
(C) preventing another from acquiring information likely to affect his judgment in the transaction;
(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.
TEX. PENAL CODE ANN. § 31.01(1)(A)-(E) (West Supp. 2017). The lack of effective consent may be shown by circumstantial evidence. See Williams v. State , 591 S.W.2d 873, 875 (Tex. Crim. App. [Panel Op.] 1979) (citing Taylor v. State , 508 S.W.2d 393, 397 (Tex. Crim. App. 1974) (lack of consent may be shown by circumstantial evidence "the same as any other issue in a criminal case may be proved by circumstantial evidence")). In reviewing the sufficiency of the evidence, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." Guevara v. State , 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (quoting Cordova v. State , 698 S.W.2d 107, 111 (Tex. Crim. App. 1985) ).
Here, the circumstantial evidence is legally sufficient to support the jury's implied finding that the two checks were obtained by Briscoe without the effective consent of their owner. April testified that Briscoe instructed him and other CCR employees to sell CCR's equipment.[9] As detailed above, Michael made the checks out *108 to CCR, the checks' memo lines reference a truck, two Ranger ATVs, and a Nortrac tractor (collectively referred to as "the equipment"). Pierce found one of the ATVs at Michael's business, and Pierce testified that he "went down the roadway and found the tractor at a hydraulic shop. They were having some work done on it." (Emphasis added). The jury could have inferred that Pierce was referring to Jemasco having the tractor repaired at the shop. Skidmore testified that Michael brought him the other Ranger to see if he could get it running again.
The jury could have inferred that Michael believed his two checks had purchased the equipment from the rightful owner because the checks listed the equipment in the memo lines and Jemasco and Michael were investing in having some of the equipment repaired. However, the evidence showed that Briscoe neither owned the property nor was authorized to sell any of it. The check dates and amounts correspond exactly with deposits made into CCR's bank account, to which only Briscoe and his wife had access. Therefore, the jury could have inferred that Briscoe received and deposited the checks.
From this evidence and reasonable inferences drawn therefrom, the jury could have found that Briscoe obtained the checks by deception-that is, by failing to correct Michael's impression that he (Briscoe) owned the equipment or was authorized to sell it. Therefore, we find that the evidence supporting the verdict was legally sufficient, and we overrule this point of error.
IV. Did the Trial Court Err in Admitting Previously Undisclosed Evidence?
In his final point of error, Briscoe contends that he is entitled to a new trial because the State willfully withheld State's Exhibits 20 and 32 in violation of Article 39.14 of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2017). State's Exhibit 20 was used to refresh Jeff Richmond's memory regarding his purchase of a bulldozer from "a hunting camp, a lodge." State's Exhibit 32 was a photograph of Briscoe and his wife taken during their vacation to Mexico. Briscoe objected to the exhibits because the State had failed to produce them pursuant to his pretrial discovery request, and while Exhibit 32 was admitted into evidence, Exhibit 20 was not.
When a prosecutor willfully withholds evidence in violation of a discovery order, exclusion of the evidence is the proper remedy. Oprean v. State , 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Exclusion of evidence in this context is in the nature of a "court-fashioned sanction" for prosecutorial misconduct. See Francis v. State , 428 S.W.3d 850, 854-55 (Tex. Crim. App. 2014). In other words, even though lesser remedies might suffice to cure harm, exclusion is required if the record shows the prosecutor intentionally violated the order in a calculated effort to frustrate the defense. See Oprean , 201 S.W.3d at 728.
We review a trial court's refusal to exclude evidence the State withheld from a defendant in violation of a discovery order for an abuse of discretion. Francis , 428 S.W.3d at 855. When the trial court makes findings of fact "based on an evaluation of credibility and demeanor," we "should show almost total deference" to those findings. Oprean , 201 S.W.3d at 726 (quoting Guzman v. State , 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) ). When the trial court does not make findings of fact, we "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as *109 those findings are supported by the record." Id. (quoting State v. Ross , 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) ).
Article 39.14 of the Texas Code of Criminal Procedure contains provisions regarding discovery in criminal cases. See TEX. CODE CRIM. PROC. ANN. art. 39.14. At the time of the offense in this case (May 2011), Article 39.14 was different than the current version. The prior version of Article 39.14 required a defendant to file a motion and obtain an order from the trial court in order to obtain discovery from the State.[10] Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 475 (eff. Jan. 1, 1966), amended by Act of May 21, 1999, 76th Leg., R.S., ch. 578, § 1, 1999 Tex. Gen. Laws 3118, 3118 (eff. Sept. 1, 1999); Act of May 29, 2005, 79th Leg., R.S. ch. 1019, § 1, 2005 Tex. Gen. Laws 3464, 3464 (eff. June 18, 2005); Act of May 18, 2009, 81st Leg., R.S., ch. 276, § 2, 2009 Tex. Gen. Laws 732, 733 (eff. Sept. 1, 2009) (current version at TEX. CODE CRIM. PROC. art. 39.14 ). Because Briscoe failed to file such a motion, he was not entitled to discovery from the State. See itation index="35" url="https://cite.case.law/citations/?q=2009%20Tex.%20Gen.%20Laws%20732">id. Therefore, we overrule this point of error.
We affirm the trial court's judgment.

In companion cases 06-17-00060-CR and 06-17-00061-CR, Briscoe appeals from convictions for making a false statement to obtain credit of more than $1,500, but less than $20,000, and theft of property valued at more than $20,000, but less than $100,000.

Briscoe also argues that the evidence is factually insufficient to sustain the verdict. However, the Texas Court of Criminal Appeals has made clear that in criminal cases, the Jackson v. Virginia test for legal sufficiency of the evidence is the only standard that we should apply in determining whether there is sufficient evidence to support the elements of a criminal offense that requires proof beyond a reasonable doubt. Brooks v. State , 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op) (citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ).

The Bobcat is also referred to in the record as a skid loader and skid-steer.

Briscoe denied ever receiving the checks, and the backs of the checks do not show his endorsement.

At that time, Briscoe also objected as to relevance, but he failed to obtain a ruling; therefore, the issue was not preserved for our review. See Tex. R. App. P. 33.1(a)(1), (2).

Randomly sprinkled into Briscoe's sufficiency challenge are claims that the trial court erred in admitting hearsay testimony and violated his rights under the Confrontation Clause. Appellants are required to provide a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). The failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal. See Lawton v. State , 913 S.W.2d 542, 558 (Tex. Crim. App. 1995), overruled on other grounds by Mosley v. State , 983 S.W.2d 249 (Tex. Crim. App. 1998) ; Narvaiz v. State , 840 S.W.2d 415, 430 (Tex. Crim. App. 1992). Briscoe provides a one-sentence, conclusory statement regarding hearsay that lacks any citations to legal authority, and other than a passing reference to Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), his mention of the Confrontation Clause is likewise inadequately briefed and analyzed. Accordingly, these issues were waived.

See Tex. Penal Code Ann. § 31.03(a), (b)(1) (West Supp. 2017).

Briscoe only challenges the sufficiency of the evidence regarding consent. Therefore, we do not address the sufficiency of the evidence regarding the remaining elements of the offense.

Briscoe denied selling CCR's equipment, instructing or authorizing anyone else to sell the equipment, or depositing or receiving proceeds from the sale of the equipment.

On January 1, 2014, the Legislature enacted the Michael Morton Act amending Article 39.14. See Act of May 14, 2013, 83d Leg., R.S., ch. 49, § 2, 2013 Tex. Gen. Laws 106, 106 (eff. Jan. 1, 2014) (codified at Tex. Code Crim. Proc. art. 39.14 ). The Act significantly changed Texas law related to discovery in criminal cases in order to prevent wrongful convictions by ensuring defendants have access to the evidence in the State's possession so that they may prepare a defense. See itation index="48" url="https://cite.case.law/citations/?q=2013%20Tex.%20Gen.%20Laws%20106">id. ; see also Sponsor's Statement of Intent, Bill Analysis, C.S.S.B. 1611, (available at http://www.capitol.state.tx.us/tlodocs/83R/analysis/pdf/SB01611S.pdf); Ex parte Pruett , 458 S.W.3d 537, 542 (Tex. Crim. App. 2015) (order) (per curiam) (Alcala, J., dissenting). However, the Act only applies to "an offense committed on or after the effective date of [the] Act," January 1, 2014, and the offense alleged in this case occurred in 2011; therefore, the Act is inapplicable here. See Act of May 14, 2013, 83d Leg., R.S., ch. 49, §§ 3-4, 2013 Tex. Gen. Laws 106, 108.