# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00443-CR

---

**Kenneth Wayne Elkins, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. CR2022-332, THE HONORABLE STEPHANIE BASCON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Kenneth Wayne Elkins was convicted of causing injury to an elderly individual, his mother ("Mother"),[1] and sentenced to ten years' imprisonment, but the jury recommended that he be placed on community supervision. *See* Tex. Penal Code §§ 12.34, 22.04; Tex. Code Crim. Proc. art. 42A.055. The trial court rendered its judgment of conviction consistent with the jury's verdicts. *See* Tex. Code Crim. Proc. art. 42A.055. In four issues on appeal, Elkins contends that the evidence was insufficient to support his conviction and that the trial court erred by admitting evidence regarding statements that Mother made to an investigating officer, by admitting evidence regarding an extraneous offense allegedly committed by him, and by admitting evidence regarding calls he made to his family members while he was in jail. We will affirm the trial court's judgment of conviction.

---

[1] The victim asked the police to refer to her by a pseudonym in their reports, and she was referred to by a pseudonym at trial. We will likewise refer to her by a pseudonym in this opinion.

## BACKGROUND

Elkins was arrested on July 5, 2022, and later charged with the offense of injury to an elderly individual for allegedly causing Mother bodily injury. During the trial, the following witnesses testified: Officer Jerryd Airola, who responded to two 911 calls concerning Mother's apartment on July 4, 2022, and July 5, 2022; Officer Jeff Simmons, who responded to the 911 call on July 5, 2022; Christopher Walderman, who was a paramedic and who was summoned by the responding officers to evaluate Mother; Officer Gary Ebert, who was the custodian of records for the Comal County Jail; Officer Mario Montoya, who was a police officer with the San Antonio Police Department and who responded to a 911 call in April 2021 concerning Mother; Ashley Kublank, who was a hospice nurse and custodian of Mother's medical records; and Amber Elkins, who was Mother's granddaughter and Elkins's daughter. At trial, the trial court admitted into evidence footage from the body cameras worn by Officers Airola and Simmons, Mother's medical records, recordings of Elkins's jail phone calls to his family members, and a copy of a granted motion to dismiss filed by the State in a similar family violence case against Elkins in Bexar County.

Officer Airola testified that he responded to a 911 call concerning Mother on July 4, 2022. After determining that Mother was not injured, the officer left her apartment. In the afternoon on the following day, the officer responded to another call concerning a disturbance at Mother's apartment. When he arrived, he knocked on the door, and Mother told him to enter. According to the officer, Mother "was very upset and troubled," was crying, appeared frail and weak, was on oxygen, and "did not look good," and the officer explained that Mother appeared to be over sixty-five years old. The officer also noticed that Mother had bruising on both arms from the middle of her arms all the way to her hands. The officer

2

described these injuries as new ones because they were not present when he saw Mother the day before. Although Mother stated that she did not think it was necessary to call paramedics and although the only injuries he noticed were the bruising on Mother's arms, the officer requested that paramedics evaluate her.

While in the apartment, the officer also noticed Elkins lying on a bed in one of the apartment's other bedrooms and went to talk with him. During the conversation between the officer and Elkins, Elkins denied injuring Mother. The officer noticed a large, empty bottle of vodka on the floor of Elkins's bedroom. Shortly thereafter, the officer arrested Elkins and placed Elkins in his patrol car. The officer then returned to the apartment to talk with Mother about her injuries. The officer recalled that Mother disclosed that Elkins touched her and threw objects at her. Mother also described her pain level as being a five out of ten. In his cross-examination, the officer related that Mother told him that she was on medications that caused her to bruise easily, and he agreed that some medicines can result in bruising from a minimum amount of contact; however, the officer clarified that the extent of the bruising that he saw led him to conclude that the bruising was not caused by minor contact.

During Officer Airola's testimony, footage from his body camera taken during his second response to Mother's apartment was played for the jury, and the footage showed large bruises on both of Mother's arms and hands. On the footage, Mother told the officer that Elkins was intoxicated and violent, showed the officer her injuries, stated that they occurred last night, and related that they had been inflicted over the last two days. Next, the footage captured the officer going into Elkins's bedroom, talking with Elkins, and later directing Elkins out of the apartment. Mother told the officer that she did not mention being injured when the officer arrived the day before because she was so scared of Elkins and did not know what to do. When

3

describing how she was injured, Mother stated that Elkins threw objects at her and that she raised her arms and hands to protect herself. Mother also explained that Elkins tossed her oxygen machine and that it fell on one of her arms when she tried to keep it from falling over. Further, Mother related that Elkins broke her phone to keep her from calling the police. Although Mother told the officer that she did not want to press charges, she did ask for a protective order to keep Elkins away from her. Additionally, the following exchange occurred between Officer Airola and Mother:

[Officer Airola]: On a scale of zero to ten, with ten being the worst pain you ever felt in your life and zero being no pain like you didn't even feel it.

[Mother]: About a five.

[Officer Airola]: About a five from being assaulted?

[Mother]: Yeah.

Next, Officer Simmons testified that Officer Airola was his partner and that they both responded to Mother's apartment. Officer Simmons related that Elkins appeared intoxicated, that the room where Elkins was lying down smelled like alcohol, and that Officer Airola arrested Elkins. Additionally, Officer Simmons testified that paramedics were called to evaluate Mother, that Mother had bruising up and down both of her arms, and that Mother told the paramedics that she bruises easily because of her medicine. The officer recalled that Mother did not want to press charges and that Mother stated at different times that she was and was not in pain.

During Officer Simmons's testimony, footage from his body camera was played for the jury, and like the previous video, this one showed the bruising on Mother's arms and hands. Additionally, on this footage, Mother told the paramedics that she was on medication that

4

caused her to bruise easily and described Elkins as a violent alcoholic. When describing the incident, Mother told the paramedics that she told Elkins to stop, had bruises everywhere, was scared, and was using an oxygen machine before Elkins broke it and told her she did not need it. Mother stated that Elkins grabbed her, shook her, and called her names. Mother said that the incident occurred the night before, and in response to a question by one of the paramedics, Mother stated that she was not currently experiencing pain.

After Officer Simmons concluded his testimony, Walderman explained that his paramedic unit was called to Mother's apartment to evaluate her injuries. When describing Mother, Walderman stated that Mother was 81 years old, was alert and oriented, was suffering from atrial fibrillation and chronic obstructive pulmonary disorder ("COPD"), needed oxygen to treat her COPD, and had bruising on her arms that was consistent with an assault. Mother told the paramedics that Elkins caused the bruises by grabbing her, that Elkins had been mentally abusing her by yelling at her and calling her names, that she was afraid of Elkins, and that she did not want to be transported to the hospital.

The State called Officer Ebert, who explained that he was the custodian of records for the Comal County Jail where Elkins had been housed, that inmates were given their own PINs to identify them when they used the phone at the jail, and that the jail used voice identification software to identify the inmates who used the phone system, but he admitted that it was possible for another inmate to use a PIN belonging to someone else. During Officer Ebert's testimony, the trial court admitted into evidence recordings of phone calls between Elkins and members of his family, and the recordings were played for the jury, including the following:[2]

---

[2] During the officer's testimony, he discussed another recording of Elkins in which Elkins used the PIN belonging to another person at the jail, and that recording was played for the jury. However, that recording is not part of the appellate record.

5

July 7, 2022 phone call between Elkins and Mother: Elkins told Mother that he was sorry and hoped she was alright. Elkins asked Mother if she was going to drop the charges like she did last time.

July 10, 2022 phone call between Elkins and his adult son J.J.: Elkins said he "fucked up again," and J.J. agreed.

July 14, 2022 phone call between Elkins and Mother: Elkins asked Mother what she told the police. Mother said she told them that her bruising was from her medicine and that Elkins helped her up after she fell.

August 18, 2022 phone call between Elkins and Mother: Elkins asked Mother to see if other members of their family would contribute to his commissary account. Elkins told Mother that he is going to kill himself when he gets out of prison.

September 2, 2022 phone call between Elkins and Mother: Elkins told Mother that they almost had the case "beat." Mother informed Elkins that she could not help financially because she only had "$4 to [her] name."

November 10, 2022 phone call between Elkins and Mother: Elkins told Mother that if she did not go to court, there would be no one else to testify and told Mother that the State's case depends entirely on her testimony.

January 4, 2023 phone call between Elkins and Mother: Elkins told Mother that he was going to go ahead and "sign because [he] was done being here" and that if the State offered him "ten years, [he] would accept it and let them send [him] to prison." After Elkins asked Mother if she would be open to moving closer to her grandson and after Mother said she did not want to move, Elkins told Mother to "die alone."

Next, the State called Officer Mario Montoya, who testified that he was a police officer with the San Antonio Police Department and had responded to a prior incident involving Mother on April 28, 2021. Specifically, the officer related that Mother's granddaughter Amber Elkins reported that Mother had been subjected to family violence. When the officer investigated, he noticed that Mother had a bruise on her right arm that was consistent with having been assaulted, and Mother told the officer that Elkins caused the bruises by grabbing her arms and pressing her with his thumbs. In addition, the officer recalled that Elkins admitted that he pushed Mother but denied knowing how the bruises occurred. While testifying, the officer

6

acknowledged that the charges stemming from this prior incident were dismissed. During his cross-examination, the officer testified that Mother informed him that she bruises easily and that medication can cause someone to bruise from minor incidents. Additionally, a copy of the State's motion to dismiss in the prior case was admitted into evidence, and the motion explained that the case was dismissed because it "does not meet elements of offense."

Following this testimony, Ashley Kublank testified that she was a nurse, that Mother was in a nursing home, that Mother had COPD and required continuous oxygen, that Mother had recently had a mental decline, that Mother had difficulty performing her daily activities, and that Mother would not have been able to testify in her current condition. Kublank also testified that Mother was 82 years old at the time of trial.

Finally, the State called Mother's granddaughter Amber. Amber related that Mother was 82 years old. Additionally, Amber explained that Mother was living with her when the incident occurred and that Amber would allow Elkins to stay in the apartment occasionally. Regarding the incident, Amber testified that she was not present but called 911 after Mother called her and said that Elkins had been drinking all day and scared her. Concerning the phone calls played during Officer Ebert's testimony, Amber related that the voices belonged to Elkins, Mother, and J.J.

During Amber's testimony, the following recordings of jail phone calls between Amber and Elkins were admitted into evidence and played for the jury:

> July 6, 2022 phone call: Amber said Mother had been "beaten up." Elkins told Amber that Mother could "make it all go away by doing what she did last time."
>
> July 7, 2022 phone call: Elkins told Amber that Mother previously told the San Antonio police officers that nothing had actually happened, causing the case to be dropped. Amber said that there was evidence against him in this case, and Elkins stated that there had been evidence against him in the San Antonio case too.

7

Amber said the family should not have to keep bailing him out when he hurts Mother. Elkins apologized for his actions and acknowledged that he made "a bad mistake" and "fucked up."

July 7, 2022 phone call: Elkins told Amber that he was sorry for everything and that he knows he "fucked up."

After considering the evidence, the jury found Elkins guilty of the charged offense. During the punishment phase, Elkins elected to testify. At the end of the punishment phase, the jury assessed Elkins's punishment at ten years' imprisonment but recommended that he be placed on community supervision, and the trial court rendered its judgment of conviction consistent with the jury's verdicts.

Elkins appeals the trial court's judgment of conviction.

## DISCUSSION

In four issues on appeal, Elkins contends that (1) the trial court erred by overruling his Confrontation Clause objection and admitting evidence regarding Mother's statements to Officer Airola, (2) the trial court erred by overruling his objection and admitting evidence regarding an extraneous offense allegedly committed by him, (3) the trial court erred by overruling his objection and admitting evidence regarding calls that he made to family members while in jail, and (4) the evidence is insufficient to support his conviction. Because his sufficiency claim could result "in greater relief than his other issue[s]," we address Elkins's last issue first. *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

### Sufficiency of the Evidence

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*,

8

602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id.* "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally

insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107.

Under the Penal Code, an individual commits the offense of injury to an elderly individual "if he intentionally [or] knowingly . . . causes to a[n] . . . elderly individual . . . bodily injury." Tex. Penal Code § 22.04(a). "'Elderly individual' means a person 65 years of age or older." *Id.* § 22.04(c)(2). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). The factfinder "is permitted to draw . . . an inference that the victim suffered pain as a result of her injuries." *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). As charged in the indictment, the State alleged that Elkins intentionally or knowingly caused bodily injury to Mother "by grabbing or holding" her with his hands or arms "or by throwing" her.

In challenging the sufficiency of the evidence,[3] Elkins first asserts that any evidence regarding Mother's age was hearsay, that he objected to the hearsay testimony, and that the testimony could not, therefore, establish the age element. However, even if some or all the evidence was hearsay, in determining whether sufficient evidence was presented to support a conviction, appellate courts consider all the evidence regardless of whether it was rightly or wrongly admitted. *Stahmann*, 602 S.W.3d at 577; *see also Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004) (explaining that appellate courts consider hearsay evidence in

---

[3] In his brief, Elkins contends that the evidence is legally and factually insufficient to support his conviction. However, the court of criminal appeals has determined that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

sufficiency review even if trial court erred in admitting evidence). Officer Airola testified that Mother appeared to be over 65 years old when he responded to the 911 call, and paramedic Walderman testified that Mother was 81 years old when he evaluated her after the incident. Similarly, Kublank and Amber both testified that Mother was 82 years old at the time of the trial. In addition, the jury was able to observe Mother's appearance on body camera footage taken near the time of the incident. This evidence and the reasonable inferences that the jury could have made from it were sufficient to establish that Mother was an "elderly individual" as defined in the Penal Code provision governing the charged offense. *See* Tex. Penal Code § 22.04(c)(2).

In his next set of arguments, Elkins contends that the evidence was insufficient to establish that Mother suffered bodily injury because it did not show that she felt any pain. Although Elkins acknowledges that Mother told Officer Airola that she was experiencing pain, he insists her statement was "not sufficiently clear whether she's referring to the pain from the alleged grabbing . . . or any ambient pain she is feeling in the moment talking to the officer." Similarly, Elkins contends that the evidence of the bruises on Mother's arms was insufficient because other evidence was presented establishing that Mother was on medication that made her more susceptible to bruising even from minor contact. Additionally, Elkins emphasizes that no evidence showed that he caused Mother to have an illness or that the bruises impaired her ability to do anything. For these reasons, Elkins insists that the statutory element of bodily injury was not established by the evidence.

Although Elkins suggests that Mother's answer was unclear as to the source of her pain, she explained to Officer Airola that she experienced pain at a level of five out of ten from the assault. Evidence of this type of pain is sufficient to establish bodily injury. *See Garcia*, 367 S.W.3d at 688. Even if the answer were unclear as suggested by Elkins, the jury

11

could have reasonably inferred from the visible injuries and the nature of Officer Airola's questions that Mother was referring to pain caused by Elkins's actions and not some generalized feeling of pain or pain from another source. *See Stahmann*, 602 S.W.3d at 577.

Moreover, although evidence was presented at trial that Mother was on medication that made her more susceptible to bruising even from minor contacts, the footage from the body cameras showed bruising over significant portions of Mother's arms and hands, and Officer Airola testified that the bruises were new injuries that had not been present when he went to the apartment on the night before the incident and that Mother told him that Elkins had thrown objects at her. Additionally, Mother told the paramedics that Elkins grabbed her and shook her, causing the injuries on her arms, despite her telling him to stop and that Elkins's actions scared her. From this evidence, the jury could have reasonably inferred that the bruising, whatever the effects of Mother's medication, was caused by Elkins's grabbing her forcefully, resulting in physical pain and bodily injury. *See Arzaga*, 86 S.W.3d at 778 (recognizing that "[t]he existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute"). Accordingly, the evidence was sufficient to establish that Mother suffered bodily injury through the pain or bruising that she experienced, and we, therefore, need not address Elkins's arguments regarding whether the evidence established that Mother experienced an illness or impairment of a physical condition. *See* Tex. Penal Code § 1.07(a)(8) (listing alternative methods for showing bodily injury); *see also Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (explaining that because reviewing court determined that evidence was sufficient to establish one type of serious bodily injury, it "need not address the second alternative").

In his final set of arguments in this issue, Elkins contends that the evidence was insufficient because one of the manners of injury mentioned in the indictment alleged that he caused Mother bodily injury by "throwing" her and because no evidence was presented at trial indicating that he threw Mother on the day in question. On the contrary, Elkins emphasizes that the only reference to Mother possibly having been thrown came through Officer Montoya, who discussed the prior act investigated by the San Antonio Police Department.

Although Elkins correctly identified the second manner that the indictment alleged he injured Mother, the indictment also alleged that he injured Mother by grabbing her. As discussed above, the evidence was sufficient to support that allegation and, therefore, to support his conviction. *See Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004) (observing that if "multiple theories are submitted to the jury, the evidence is sufficient to support a conviction so long as the evidence is sufficient to support a conviction for one of the theories submitted to the jury").

For the above reasons, we conclude that the evidence was sufficient to support Elkins's conviction and overrule his fourth issue on appeal.

**Mother's Statements to Officer Airola**

In his first issue on appeal, Elkins asserts that the trial court erred by overruling his Confrontation Clause objection and admitting into evidence the footage from Officer Airola's body camera and Officer Airola's testimony about his conversation with Mother. More specifically, Elkins contends that the evidence constituted testimonial statements from Mother and that it was, therefore, improper to admit those statements when Mother had not been and would not be called as a witness. Although Elkins acknowledges that statements made to police officers are not testimonial when the purpose of the police questioning is to assist in an ongoing

13

emergency, he contends that no ongoing emergency existed in this case and that the questions were not to aid Mother. Further, Elkins asserts that Officer Airola's questions concerned what had happened in the past and not the circumstances present when the officer arrived. Accordingly, Elkins contends that the admission of the evidence violated his right to confront the witnesses against him and that the admission harmed him.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011). Appellate courts "review a constitutional legal ruling, such as whether a statement is testimonial or non-testimonial under the Confrontation Clause, de novo." *Infante v. State*, 404 S.W.3d 656, 662 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Moreover, "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). "An error[, if any,] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see Sandone v. State*, 394 S.W.3d 788, 794 (Tex. App.—Fort Worth 2013, no pet.) ("The improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial.").

Although Elkins objected to the admission of Officer Airola's testimony and the body camera footage on confrontation grounds, the same evidence was presented through the

14

testimony of paramedic Walderman, to which Elkins did not object. Specifically, Walderman testified that Mother had bruising on her arms that was consistent with being assaulted. Further, Walderman recalled that Mother related that Elkins grabbed her, had been mentally abusive, and had been yelling at her. Additionally, Walderman stated that Mother revealed that the cause of her visible injuries was Elkins's grabbing her.

Accordingly, any error from the admission of this evidence was harmless. *See Lozano v. State*, 359 S.W.3d 790, 823-24 (Tex. App.—Fort Worth 2012, pet. ref'd) (determining that any constitutional error from admission of evidence in violation of Confrontation Clause was cured given unobjected-to admission of evidence establishing same facts as allegedly inadmissible evidence); *Crivello v. State*, 4 S.W.3d 792, 801 (Tex. App.—Texarkana 1999, no pet.) (concluding that defendant did not preserve confrontation claim where same evidence was introduced through another source without objection).

For those reasons, we overrule Elkins's first issue on appeal.

**San Antonio Incident**

In his second issue on appeal, Elkins contends that the trial court erred by overruling his objections under Rules of Evidence 403 and 404 and admitting evidence regarding a prior alleged offense from Bexar County through Officer Montoya's testimony.[4] More

---

[4] In the heading for this issue, Elkins also lists the Confrontation Clause. However, in the analysis of this issue Elkins does not reference the Confrontation Clause or cases analyzing issues under the Confrontation Clause and does not explain how the testimony at issue was testimonial in nature. Accordingly, we conclude that any claim regarding the Confrontation Clause in this issue "is inadequately briefed and presents nothing for review." *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see* Tex. R. App. P. 38.1(i); *see also Briscoe v. State*, 542 S.W.3d 100, 106 n.6 (Tex. App.—Texarkana 2018, pet. ref'd) (determining that Confrontation Clause claim had been waived through inadequate briefing). Our determination that the brief does not present a Confrontation Clause claim is also consistent with the portion of this issue asserting that the trial court's rulings harmed him. In that section, Elkins refers to the

specifically, Elkins argues that the evidence constituted impermissible propensity evidence under Rule 404 and that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Rule 403.

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court when the ruling was made. *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

*Rule of Evidence 404*

Article 38.371 of the Code of Criminal Procedure governs the admission of evidence in cases in which the defendant has a relationship with the victim that is governed by certain provisions of the Family Code. Tex. Code Crim. Proc. art. 38.371(a); *see* Tex. Fam. Code § 71.003 (defining family as individuals related by consanguinity). The provision states that for these types of prosecutions, "subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that

---

trial court's ruling as a nonconstitutional error and sets out the standards by which appellate courts review nonconstitutional errors. *See* Tex. R. App. P. 44.2(b).

16

would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. art. 38.371(b). However, the provision "does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law." *Id.* art. 38.371(b)-(c). Permissible evidence under article 38.371 includes "evidence that: (1) explains why a victim of domestic violence is unwilling to cooperate with prosecution; (2) confirms the victim's initial—and later recanted— statements to police; or (3) contextualizes the nature of the relationship between victim and assailant." *Fernandez v. State*, 597 S.W.3d 546, 566 (Tex. App.—El Paso 2020, pet. ref'd).

Article 38.371 is subject to the requirements of the Rules of Evidence. *See* Tex. Code Crim. Proc. art. 38.371. Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Tex. R. Evid. 401, 402. Furthermore, under Rule 404, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this type of "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b). Additionally, although "Rule 404(b) limits the admissibility of specific acts used to show only the defendant's character, and may keep a prosecutor from trying the case not on the charged offense but on the past acts of the accused, it certainly does not block the admission of all relationship evidence." *Garcia v. State*,

17

201 S.W.3d 695, 703 (Tex. Crim. App. 2006). On the contrary, "in cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible." *Id.*[5]

As set out earlier, Officer Montoya testified that he responded to a 911 call in Bexar County regarding family violence in which Mother was the alleged victim. Further, Officer Montoya explained that he saw a bruise on Mother that was consistent with being assaulted and that Mother told him that Elkins caused the bruising by grabbing her arm and pressing her with his thumb. Additionally, Officer Montoya recalled that Elkins told him that he had pushed Mother and that she fell onto the bed but denied knowing what caused the bruising. Further, Officer Montoya described how the Bexar County case had been dismissed. Before Officer Montoya testified, the State played a recording of a phone call between Elkins and Mother in which he asked her to drop charges as she had before.

Given the above, the evidence regarding a similar prior incident of abuse and involving the same manner of abuse was probative because it contextualized the nature of the relationship between Elkins and Mother and helped explain some of her conduct during the incident and her hesitancy in reporting the offense or pressing charges. *See Fernandez*, 597 S.W.3d at 566; *see also Chavez v. State*, 399 S.W.3d 168, 173 (Tex. App.—San Antonio 2009, no pet.) (stating that evidence about relationship between defendant and victim "was a material issue for consideration by the jury because it helped illustrate the nature of their

---

[5] In its appellee's brief, the State asserts that Elkins failed to adequately brief any complaint under Rule 404(b) because he did "not cite authority or explain how the admission of this evidence somehow violated Rule 404." Although the State is correct that Elkins did not refer to any case law supporting a claim under Rule 404, he did refer to the Rule in the analysis section of the brief and argue that the extraneous-offense evidence constituted impermissible propensity evidence and was used to show "character conformity with the initial assault." In the interests of justice, we will assume that the briefing on this issue was sufficient to present the issue for review.

18

relationship and possibly explained" victim's fear of defendant, failure to defend himself, and decision to leave with defendant after assault); *Brock v. State*, 275 S.W.3d 586, 589, 590 (Tex. App.—Amarillo 2008, pet. ref'd) (reviewing trial court's decision to admit evidence showing tumultuous relationship between defendant and victim and concluding that trial court did not abuse its discretion by determining that "the challenged evidence had probative force to explain the relationship between appellant and his wife, and how that relationship motivated her murder"). The evidence also helped to establish Elkins's intent when grabbing Mother in this case and to rebut his defensive theory that the bruising was caused by a combination of Mother's medicine and minor contact with her skin. *See Grider v. State*, 69 S.W.3d 681, 686-89 (Tex. App.—Texarkana 2002, no pet.) (determining that extraneous-offense evidence pertaining to similar offense was admissible under Rule 404(b) to show defendant's intent to cause bodily injury and to rebut defensive theory that victim injured herself).

For these reasons, we conclude that the trial court did not abuse its discretion by overruling Elkins's Rule 404(b) objection and allowing Officer Montoya to testify regarding the prior incident in Bexar County.

*Rule of Evidence 403*

Even if evidence is admissible under another Rule of Evidence, Rule 403 provides that evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v.*

*State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial. *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010). Moreover, reviewing courts should afford trial courts a high level of deference regarding admissibility determinations under Rule 403. *See Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd).

Although this is not an exhaustive list, courts generally balance the following factors when performing a Rule 403 analysis: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In this context, "probative value" refers to how strongly evidence makes the existence of a "fact of consequence" "more or less probable" and to how much the proponent needs the evidence, and "[u]nfair prejudice" refers to how likely it is that the evidence might result in a decision made on an "improper basis," including "an emotional one." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). Remoteness of a prior offense reduces its probative value "because, logically, the passage of time allows things and people to change." *Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd); *see Reyes v. State*,

69 S.W.3d 725, 740 (Tex. App.—Corpus Christi-Edinburg 2002, pet. ref'd) (noting that remoteness of prior offenses affects their probative value).

On appeal, Elkins contends that the probative value of the extraneous offense "is exactly ZERO" because the extraneous offense was dismissed after the State determined, as reflected in its motion to dismiss, that the elements of the alleged offense had not been met in that prior case. For that reason, Elkins argues that evidence regarding the prior offense could not help to establish any elements in the current case.

As an initial matter, we note that "extraneous misconduct may be admissible evidence even if it does not result in a conviction" and that a dismissal does not deprive evidence of a prior offense of all probative value because "there are many possible reasons for the State's choice in not prosecuting a case." *See Dennis v. State*, 178 S.W.3d 172, 183 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd). Additionally, as set out above, during trial, a recording was played in which Elkins asked Mother to drop the charges like she had another time.

Moreover, as discussed previously, the evidence regarding the prior offense was similar to the one at issue and involved the same method of injury, and the evidence had probative value because it contextualized the relationship between Elkins and Mother, helped explain her hesitation in reporting the offense, helped establish Elkins's intent in this case, and helped rebut his defensive theory that the bruising was caused by minor contact. *See James v. State*, 623 S.W.3d 533, 547 (Tex. App.—Fort Worth 2021, no pet.) (explaining that probative value increases if extraneous offense is similar to charged one). Additionally, although Officer Montoya testified that the prior offense allegedly occurred approximately fifteen months before the charged offense in this case, courts have found that similar lapses in time did not deplete the probative value of the evidence. *See, e.g., Prince v. State*, 192 S.W.3d 49, 55 (Tex. App.—

21

Houston [14th Dist.] 2006, pet. ref'd) (deciding that ten-year gap did not make extraneous offenses too remote); *Corley v. State*, 987 S.W.2d 615, 617, 621 (Tex. App.—Austin 1999, no pet.) (concluding that crime that occurred thirteen years before trial was not too remote).

For these reasons, the trial court could have determined that the probative value of the prior incident weighed in favor of admission.

Regarding the potential for the evidence to impress the jury in some irrational way, Elkins asserts that evidence pertaining to the prior offense simply served to inflame the jury. However, we note that the trial court provided an oral instruction during Officer Montoya's testimony and included an instruction in the jury charge directing the jury that it may consider evidence regarding extraneous offenses only if they first found beyond a reasonable doubt that Elkins committed the offenses and only for limited non-character-conforming purposes. *See Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the impermissible inference can be minimized through a limiting instruction"). Further, the testimony did not address a complex subject matter and addressed a self-contained act. *See Gigliobianco*, 210 S.W.3d at 641 (explaining that scientific evidence is type of evidence that might mislead jury not properly equipped to consider probative value). Moreover, the extraneous offense involved conduct that was "no more serious than the allegations forming the basis for the indictment" in this case. *See Robisheaux*, 483 S.W.3d at 220.

Given the preceding, the trial court could have reasonably determined that the evidence would not impress the jury in an irrational manner and that this factor weighed in favor of admission.

Concerning the time needed to develop the evidence, Elkins contends that admitting the extraneous offense evidence "added significantly to the length of the trial" because

22

evidence pertaining to the extraneous offense was admitted through the testimony of Officer Montoya and Amber and through recordings of jail phone calls, which Elkins asserts constituted "essentially the majority of the third day of trial." However, we note that the guilt-innocence phase of the trial was held over three days and that the record for those three days is hundreds of pages in length. Moreover, Officer Montoya's entire testimony was contained in only seventeen pages out of the entire reporter's record. Additionally, the majority of Amber's testimony concerned the charged offense, and the portion of her testimony mentioning the prior offense was less than one page in length. Similarly, the jail call recordings on which the prior offense was mentioned were approximately twenty minutes in length in total, and other topics were discussed during those calls.

Although the evidence came in from more than one witness and through recordings, the trial court could have reasonably concluded based on the short duration of the testimony and recordings that the time factor weighed in favor of admission. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (concluding this factor weighed in favor of admission where extraneous-offense evidence was less than one fifth of trial testimony); *Robisheaux*, 483 S.W.3d at 221 (finding this factor weighed in favor of admission where evidence regarding extraneous offense came in though one witness, where guilt-innocence phase lasted three days, and where testimony about extraneous offense "was only eight pages long"); *see also Brickley v. State*, 623 S.W.3d 68, 82 (Tex. App.—Austin 2021, pet. ref'd) (determining that this factor weighed in favor of admission where guilt-innocence phase lasted three days, record was hundreds of pages in length, and testimony regarding extraneous offense took up fewer than five pages).

23

Finally, turning to the State's need for the evidence, Elkins highlights that the State asserted during voir dire that a single witness could provide the evidence needed to establish all the elements of the charged offense and asserts that if the State "believed in the strength of their case and believed in the One Witness Rule, the extraneous [offense] is not necessary."

As an initial matter, we note that Elkins does not cite nor have we found any authority for his suggestion that the State's questioning potential jury members about whether they could convict under the one-witness rule would preclude the State from seeking to admit evidence regarding a prior offense. *See Blackwell v. State*, 193 S.W.3d 1, 19 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("It is proper for the State to ask during voir dire if jurors can convict on the testimony of one witness if the jurors believe that witness beyond a reasonable doubt on all of the necessary elements that establish an offense because a negative answer by a juror to the question makes the prospective juror challengeable for cause."). Moreover, in deciding whether the evidence was needed, courts should consider whether the proponent had other evidence to establish the fact of consequence, how strong the other evidence was, and whether the "fact of consequence related to an issue that is in dispute." *See Erazo v. State*, 144 S.W.3d 487, 495-96 (Tex. Crim. App. 2004).

At trial, no witness testified that they observed Elkins assaulting Mother on the day of the offense in question, and the alleged assault was not captured by any surveillance cameras. *See James*, 623 S.W.3d at 548 (noting that State had strong need for extraneous-offense evidence because no one witnessed the charged offenses and because victim's credibility was at issue). Although recordings of Mother stating that Elkins injured her and showing her injuries had been admitted and played for the jury, Elkins had presented through his questioning

24

of witnesses his defensive theory that the injuries on Mother's arms and hands were caused by her medicine making her vulnerable to bruising through slight contact. Moreover, no witness testified regarding the extraneous offense until Officer Montoya testified.

In light of the preceding, the trial court could have reasonably concluded that the State's need for the evidence weighed in favor of admission of the evidence.

Given our standard of review, the presumption in favor of admissibility, and the resolution of the factors discussed above, we cannot conclude that the trial court abused its discretion by overruling Elkins's Rule 403 objection. *See Brickley*, 623 S.W.3d at 83 (determining that trial court did not abuse its discretion by overruling Rule 403 objection to admission of evidence of prior incidents of abuse where majority of factors weighed in favor of admission of evidence); *see also Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996) (noting that Rule 403 requires exclusion "only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value").

For these reasons, we overrule Elkins's second issue on appeal.

**Recordings of Jail Calls**

In his third issue, Elkins contends that the trial court erred by overruling his Rule 403 objection to the admission of the recordings of the phone calls that he made from jail. When presenting this issue, Elkins argues that the trial court erred because the phone calls "allowed the jury to hear [him] talk extremely rudely to" the recipients of those calls and that "the evidence was so inflammatory that it improperly influenced the jury."[6] Specifically, Elkins

---

[6] As with his last issue, Elkins also references the Confrontation Clause and Rule 404(b) in the heading for this issue. Elkins also states at the introduction to this issue that at trial he objected under Rules 403, 404, 803, and 804; objected on confrontation grounds under the United States and Texas Constitutions; and objected on the basis that the admission of the phone

notes that he made the following statements on those calls: stated "I fucked up again" when talking with his son J.J. and told Mother to "die alone" when she said she was reluctant to move closer to her grandson. Elkins suggests that the probative value of the calls was "miniscule compared to the inflammatory effect on the jury through his outrageous, crude[,] and thoughtless comments"; that the time needed to develop the evidence weighed in favor of exclusion; and that the State had no need for the admission of the calls.

Although Elkins has identified on appeal two statements on the recordings that he believed were more prejudicial than probative, he argued at trial that none of the recordings should come in and did not identify which portions of the recordings should be excluded under Rule 403. Moreover, the trial court did not abuse its discretion by admitting some of the statements on the recordings. For example, on one call, Elkins told Mother that he was sorry for his actions and asked if she would drop the charges like she had before. Those statements were admissions by a party opponent and did not have the type of language that he asserts on appeal was too inflammatory to be allowed in over a Rule 403 objection. *See* Tex. R. Evid. 801(e)(2)(A) (excluding opposing party's statement from hearsay definition); *see also Lewis v. State*, 815 S.W.2d 560, 568 (Tex. Crim. App. 1991) (explaining that statements are admissible as nonhearsay when offered against party who made them); *Acosta v. State*, Nos. 02-13-00470—00471-CR, 2015 WL 5893693, at *4 (Tex. App.—Fort Worth Oct. 8, 2015, no pet.)

---

calls was cumulative. However, Elkins does not reference in the analysis of this issue any Rule of Evidence other than Rule 403, does not mention the right to confront witnesses, or assert that the admission of the calls was cumulative, and he likewise does not refer to any cases analyzing issues addressing those types of objections. Moreover, as with his last issue, Elkins asserts that the alleged error was nonconstiuional error and refers to the standard for reviewing that type of error. *See* Tex. R. App. P. 44.2(b). Consistent with our resolution of the previous issue, we similarly conclude that any claims regarding these other objections are inadequately briefed and present nothing for this Court to review. *See Lucio*, 351 S.W.3d at 896; Tex. R. App. P. 38.1(i).

(mem. op., not designated for publication) (deciding that testimony about defendant's statements on recording of call made from jail was admissible as admission by party opponent).

Generally, before a party may present "a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" "with sufficient specificity to make the trial court aware of the complaint." *See* Tex. R. App. P. 33.1(a). When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the precise objection. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). In those instances, when an exhibit contains both admissible and inadmissible evidence, a trial court may "safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection." *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992*), abrogated on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001), *overruled by Irby v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010). A general objection to evidence that consists of both admissible and inadmissible material does not preserve error. *Schmidt v. State*, 612 S.W.3d 359, 368 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). Preservation of error is a "systemic requirement" on appeal. *See Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). Appellate courts should not address the merits of an issue that has not been preserved for appellate consideration. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012).

Because the recordings contained admissible statements and because Elkins did not specify at trial which statements on those recordings should be excluded under Rule 403, the issue was not preserved for our review. *See* Tex. R. App. P. 33.1; *see also Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009) (noting that defendant identified in his appellant's

brief some examples of statements from recording that he claimed should not have been admitted but concluding that his "trial objections were insufficient to preserve any error in the admission of any portion of the audiotapes because these objections did not specifically point out which portions of the audiotapes were objected to as inadmissible").

For these reasons, we overrule Elkins's third issue on appeal.

## CONCLUSION

Having overruled all of Elkins's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   July 19, 2024

Do Not Publish